UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                          OCALA DIVISION

ANTHONY RAVON RUFFIN,

              Plaintiff,

v.                                    Case No. 5:18-cv-591-Oc-39PRL

N. RAWLS, et al.,

              Defendants.
_____

### **ORDER OF DISMISSAL WITHOUT PREJUDICE**

Plaintiff Anthony Ravon Ruffin, a federal inmate proceeding pro se and in forma pauperis, initiated this case by filing a complaint under Bivens (Doc. 1).[1] Finding the complaint deficient, the Court directed Plaintiff to amend. See Order (Doc. 16; Order to Amend). In the Order, the Court informed Plaintiff he may not join multiple, unrelated claims in one complaint. See Order to Amend at 2-3. Even though Plaintiff suggested his numerous claims were related, the Court found he in fact "describe[d] separate and wholly unrelated events that occurred at three (3) different prisons over the course of a few years." Id. at 3. The Court afforded Plaintiff an opportunity to amend, instructing him to limit his claims to those pertaining to the same transaction, occurrence, or factually related series of transactions or occurrences, which transpired at FCC Coleman. Id. at 4. The Court

---

[1] Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

warned Plaintiff that "if he files an amended pleading that suffers from the same defects as his previous complaint such pleading will be stricken, and the Court will dismiss this case without further notice." Id.

Before the Court is Plaintiff's Amended Complaint (Doc. 19; Am. Compl.), along with a "Memorandum of Fact and Law" in which he provides the Defendants' names, his factual allegations, and his claims (Doc. 19-1; Mem.). As Defendants, Plaintiff names nine individuals employed at FCC Coleman, one of whom Plaintiff says he names as a representative of the "female gender class," which consists of "523 past and present female staff of F.C.C. Coleman." See Mem. at 4. Plaintiff asserts claims under the First, Fifth and Eighth Amendments. Id. at 23-25. He seeks injunctive relief and punitive damages. Id. at 28-31.

Plaintiff has multiple motions pending before the Court as well (Docs. 7, 8, 22-34). In his motions, Plaintiff makes the following requests: that the Court appoint him counsel (Doc. 7); that he be permitted to serve copies of the notice of designation (Doc. 8); that the Court consider by reference documents he filed with his original complaint (Docs. 23, 25, 27); that he be permitted to obtain documents in the possession of FCC Coleman (Docs. 21, 26, 30); that he be permitted to supplement or clarify his claims (Docs. 28, 29, 33); that he be permitted to clarify his gender and submit briefing on the disparity between transgender

2

and cisgender inmates (Docs. 31, 32); and that he be permitted to correct clerical errors (Docs. 33, 34).

Upon review, Plaintiff's Amended Complaint is subject to dismissal for Plaintiff's failure to comply with the Court's Order to Amend and because he fails to state a claim. As such, the Court will not rule on Plaintiff's motions.

### I. Failure to Comply

A district court has discretion, under the Federal Rules of Civil Procedure 41(b), to dismiss a pro se plaintiff's action for his failure to comply with court rules or a court order. See Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989) ("[D]ismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion.").

> Rule 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed.R.Civ.P. 41(b). Rule 41(b) provides the district court "discretion to impose sanctions on a party who fails to adhere to court rules." Zocaras,[2] 465 F.3d at 483. A district court may sua sponte dismiss a case under Rule 41(b). Betty K Agencies, Ltd. v. M/V Monada, 432 F.3d 1333, 1337 (11th Cir.2005).

Powell v. Harris, 628 F. App'x 679, 680 (11th Cir. 2015) (holding the district court did not abuse its discretion dismissing the case without prejudice for the plaintiff's noncompliance with the

---

[2] Zocaras v. Castro, 465 F.3d 479 (11th Cir. 2006).

3

court's instructions to file a proper complaint). See also Duong Thanh Ho v. Costello, 757 F. App'x 912, 914-15 (11th Cir. 2018) (affirming the district court's dismissal without prejudice for the pro se plaintiff's failure to comply with the court's order to amend).

Despite the Court's instructions and warning, Plaintiff's Amended Complaint suffers from the same deficiencies as the original. Plaintiff again raises multiple, unrelated claims. Plaintiff alleges the following: Defendant Rawls filed a fictitious disciplinary report against him in retaliation for his grievance-writing; Defendant Taylor failed to process his grievance appeal; Defendant White violated his due process rights with respect to a disciplinary hearing; Defendant Kleckner failed to perform her duties as a case management coordinator; Defendant Dunbar failed to safeguard Plaintiff from gender discrimination; Defendant Cheatham failed to resolve communication barriers; Defendant Goodman harassed Plaintiff and impeded his access to the grievance process; Defendant Wimms retaliated against him and confiscated a letter to his mother; and Defendant Padgett, along with other female staff, "arouse[d] [his] inherent propensity to procreate." See Mem. at 17, 23-25.

Plaintiff attempts to demonstrate his claims are bound by a common thread of gender discrimination, which began when Defendant Rawls wrote a disciplinary report against him. However, as before,

4

the Court is not convinced the claims are sufficiently related to be joined in one action. Plaintiff's various claims do not arise out of the "same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a). For instance, the alleged fictitious disciplinary report by Rawls occurred in 2016. See Order to Amend at 2. Most of the other incidents of which Plaintiff complains occurred in 2018, when Plaintiff returned to FCC Coleman after two transfers. See Mem. at 6-7, 9.

Plaintiff also includes factual allegations against individuals at FCC Allenwood, despite the Court's admonition that, in his original Complaint, he improperly joined "defendants located at multiple prisons." See Order to Amend at 3-4. Finally, Plaintiff asks the Court to consider by reference the allegations in the memorandum supporting his original complaint, demonstrating an unwillingness to correct the deficiencies the Court warned him would result in a dismissal of the action.[3] See id. at 4.

For these reasons, Plaintiff's Amended Complaint is subject to dismissal without prejudice to his right to initiate a new case if he wishes to pursue any of his numerous claims. See Smith v. Owens, 625 F. App'x 924, 928–29 (11th Cir. 2015) (affirming the district court's dismissal of the plaintiff's complaint against ten corrections officers for unrelated excessive-force incidents

---

[3] The memorandum Plaintiff references is over 250 pages.

for the plaintiff's noncompliance with Rule 20). If Plaintiff chooses to re-file his claims, he should keep in mind the below.

## B. Frivolity Review

The Prison Litigation Reform Act (PLRA) requires a district court to dismiss a complaint if the court determines the action is frivolous, malicious, or fails to state a claim on which relief can be granted. See 28 U.S.C. § 1915(e)(2)(B). With respect to whether a complaint "fails to state a claim on which relief may be granted," the language of the PLRA mirrors the language of Rule 12(b)(6), Federal Rules of Civil Procedure, so courts apply the same standard in both contexts. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); see also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not suffice. Id. (quotations, alteration, and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal

6

theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

In reviewing a pro se plaintiff's pleadings, a court must liberally construe the plaintiff's allegations. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011). However, the duty of a court to construe pro se pleadings liberally does not require the court to serve as an attorney for the plaintiff. Freeman v. Sec'y, Dept. of Corr., 679 F. App'x 982, 982 (11th Cir. 2017) (citing GJR Invs., Inc. v. Cty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998)).

In Bivens, the Supreme Court recognized an implied right of action for damages against a federal agent who, acting under "color of his authority," violated the plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures. 403 U.S. at 389, 397. Because a Bivens action is meant to have a deterrent effect on federal actors who violate an individual's constitutional rights, the appropriate remedy is damages, not injunctive relief. See Carlson v. Green, 446 U.S. 14, 21 (1980) (recognizing Bivens extends damages remedies against individuals).

Generally, when a plaintiff has a viable Bivens claim, a court will apply case law interpreting § 1983 cases. See, e.g., Solliday v. Fed. Officers, 413 F. App'x 206, 209 (11th Cir. 2011). Importantly, however, claims arising under Bivens are not coextensive with those arising under § 1983. Indeed, since Bivens,

7

the Supreme Court has extended Bivens remedies in only two other contexts. See Ziglar v. Abbasi, 137 S. Ct. 1843, 1854-55 (2017) (explaining the limited circumstances in which the Supreme Court, since Bivens, has extended "an implied damages action": gender discrimination in a federal employment context and failure to provide medical care for a federal prisoner) (citing Davis v. Passman, 442 U.S. 228 (1979); Carlson, 446 U.S. at 14).

The Supreme Court has expressly declined to extend Bivens remedies in multiple contexts, including for violations of the First and Fifth Amendments. Id. at 1857; accord Iqbal, 556 U.S. at 675 (recognizing the Supreme Court has "declined to extend Bivens to a claim sounding in the First Amendment"); Reichle v. Howards, 566 U.S. 658, 663 n.4 (2012) ("We have never held that Bivens extends to First Amendment claims."); Rager v. Augustine, 760 F. App'x 947, 953 (11th Cir. 2019) ("[I]t is by no means clear that a damages remedy is warranted for a First Amendment retaliation claim …"). See also Minneci v. Pollard, 565 U.S. 118, 124 (2012) (describing the contexts in which the Court has declined to extend a Bivens remedy); Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 68 (2001) ("Since Carlson we have consistently refused to extend Bivens liability to any new context or new category of defendants.").

The last time the Court was asked to recognize a new implied right of action, it clarified its precedents have made clear that "expanding the Bivens remedy is now a 'disfavored' judicial activity." Ziglar, 137 S. Ct. at 1857 (quoting Iqbal, 556 U.S. at 675). The Court emphasized its previous pronouncement urging "caution before extending Bivens remedies into any new context," and noting the Court has refrained from doing so "for the past 30 years." Id. (quoting Malesko at 74). A cautionary approach is mandated because whether to extend new damages remedies is an action "committed to those who write the laws rather than those who interpret them." Id. (quoting Bush v. Lucas, 462 U.S. 367, 380 (1983)). The Court defined a "new context" as one that "diff[ers] in a meaningful way from previous Bivens cases decided by th[e] Court." Id. at 1859.

Where Congress has not extended a right of action, courts should refrain from creating Bivens remedies in "any new context . . . . if there are special factors counselling hesitation." Id. (quoting Carlson, 446 U.S. at 18). One such factor may be the availability of alternative remedies to address the plaintiff's alleged harm: "For if Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" Id. at 1858 (quoting, with alterations, Wilkie v.

9

Robbins, 551 U.S. 537, 550 (2007)). A second factor that may counsel hesitation is "legislative action suggesting that Congress does not want a damages remedy" in a particular context. Id. at 1865.

Applying the above principles, the Court first must consider whether Plaintiff's claims present a new Bivens context. While many of his claims are difficult to decipher, the Court will attempt to summarize the claims according to the constitutional Amendments Plaintiff identifies: the First Amendment, the Fifth Amendment, and the Eighth Amendment. Under the First Amendment, Plaintiff contends Defendants Rawls, Taylor, and Goodman retaliated against him for filing grievances; Defendant Kleckner, a case management coordinator, failed to carry out the duties owed to Plaintiff; Defendant Dunbar failed to adequately respond to Plaintiff's grievances reporting staff misconduct; and Defendant Wimms interfered with Plaintiff's freedom of expression by confiscating a personal letter. See Mem. at 23-25.

Under the Fifth Amendment, Plaintiff asserts Defendants Rawls, Taylor, White, Dunbar, Cheatham, and Padgett denied him due process with respect to prison disciplinary charges and prison policies to protect the female staff.[4] Id. Under the Eighth

---

[4] Plaintiff's claims against Defendant Padgett and the other female staff are exceedingly confusing. He states, "[Defendant Padgett] was subjected to severe and pervasive sexual harassment by me, and that management was aware of this harassment by me, and that

Amendment, Plaintiff asserts Defendants Rawls, Kleckner, Cheatham, Goodman, Wimms, and Padgett subjected him to cruel and unusual punishment and gender discrimination. Id. at 24-25.

Most of the alleged "violations" Plaintiff describes are not constitutional violations in the first instance. The only potentially cognizable claims Plaintiff asserts are the First Amendment retaliation and freedom of expression claims and the Fifth Amendment due process claims. Plaintiff complains that prison officials retaliated against him for filing grievances, opened his personal mail, and denied him due process in connection with a disciplinary hearing.

The Supreme Court has never explicitly extended Bivens remedies in the First and Fifth Amendment contexts. See Ziglar, 137 S. Ct. at 1857. As such, Plaintiff's claims are meaningfully different from those cases in which the Court has extended Bivens remedies to redress serious constitutional violations:

---

management . . . failed to prevent it or discipline me without providing me an opportunity to defend my liberty interests." See Complaint at 25. It appears Plaintiff is attempting to seek relief from or intervene in a class action lawsuit Defendant Padgett and other female staff at FCC Coleman filed against the Bureau of Prisons alleging employment discrimination (sexual harassment). In his prayer for relief, Plaintiff seeks a declaration that the female staff "violated [his] right to due process by not providing [him] an opportunity to defend [his] liberty interest before assembling a class of female gender staff complaining that [he] he sexually harass[ed them]." Id. at 29. To the extent Plaintiff asks this Court to interfere in an ongoing or resolved class action lawsuit, he is not entitled to such relief in this case.

11

unreasonable search and seizure in violation of the Fourth Amendment where federal officers entered the plaintiff's home without a warrant and handcuffed him, Bivens, 403 U.S. at 397; gender discrimination in violation of the Fifth Amendment where a congressman fired his female assistant, Davis, 442 U.S. at 248; and a denial of medical care to a federal prisoner in violation of the Eighth Amendment where the failure to treat the prisoner's asthma resulted in his death, Carlson, 446 U.S. at 19.

Because Plaintiff's claims differ in a meaningful way from those in Bivens, Davis, and Carlson, they arise in a "new context." See Ziglar, 137 S. Ct. at 1859. See also Taylor v. Lockett, No. 517CV00023OC02PRL, 2019 WL 764023, at *10 (M.D. Fla. Feb. 21, 2019) (finding the plaintiff's First Amendment retaliation claim presented a novel Bivens context); Rager v. Augustine, No. 5:15CV35/MW/EMT, 2017 WL 6627416, at *17 (N.D. Fla. Nov. 8, 2017), report and recommendation adopted, No. 5:15CV35-MW/EMT, 2017 WL 6627784 (N.D. Fla. Dec. 28, 2017), aff'd, 760 F. App'x 947 (11th Cir. 2019) (finding the plaintiff's claim that his First Amendment right was violated when prison officials retaliated against him for filing grievances was a new Bivens context).

The Court now must consider whether Bivens remedies should be extended under the circumstances Plaintiff presents. Ziglar, 137 S. Ct. at 1860. As a practical matter, the Court notes it would be unwise to chart a new course based on the allegations in

12

Plaintiff's Amended Complaint. They are vague, conclusory, and disjointed, making the claims largely indecipherable. The "special factors" referenced in Ziglar further counsel against extending Bivens remedies in this case. First, to the extent Plaintiff's complaints have any validity, he has available to him an alternative remedy: he may prevail upon the prison grievance system, which he demonstrates by reference to the numerous grievances he has filed that he knows how to access. See id. at 1858. See also Taylor, 2019 WL 764023 at *7 (recognizing the prison "grievance process is an alternative remedy that cuts against extending the Bivens remedy" to address the plaintiff's claims); Rager, 2017 WL 6627416 at *19 (same); Badley v. Granger, No. 217CV00041JMSDLP, 2018 WL 3022653, at *3 (S.D. Ind. June 18, 2018) (same).

Second, there is "legislative action suggesting Congress does not want a damages remedy" under the circumstances Plaintiff describes. See Ziglar, 137 S. Ct. at 1865. The PLRA bars a prisoner from obtaining compensatory and punitive damages absent a physical injury attributable to the alleged constitutional violation. 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."). Plaintiff alleges no physical injuries. Rather, he implies he suffers only

psychological trauma from being denied psychological health care.[5] See Am. Compl. at 6. To extend an implied damages action here would be at odds with Congress's intent to bar inmates from obtaining damages absent physical injury. Indeed, in Ziglar, the Court noted Congress's legislation in the area of prison litigation arguably "suggests Congress chose not to extend the Carlson damages remedy to cases involving other types of prisoner mistreatment." The Court recognized:

> Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. See 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the Act's exhaustion provisions would apply to Bivens suits. See Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). But the Act itself does not provide for a standalone damages remedy against federal jailers.

---

[5] Plaintiff's passing reference to a denial of psychological health care is insufficient to state a claim for denial of medical treatment under the Eighth Amendment, as was recognized in Carlson, 442 U.S. at 248. Plaintiff does not allege Defendant Goodman had subjective knowledge of his need for medical treatment and acted with deliberate indifference to that need. See Estelle v. Gamble, 429 U.S. 97, 104–05 (1976). Nor does Plaintiff allege he requested psychological treatment or that a health care staff member referred him for such treatment. To the extent Plaintiff suggests Defendant Goodman prevented him from speaking to female staff, which includes the mental health providers, his conclusory allegations are too tenuous to rise to the level of stating a deliberate indifference claim. Moreover, a claim for denial of health care in this context would be meaningfully different than the one recognized in Carlson. See Carlson, 446 U.S. at 19.

Ziglar, 137 S. Ct. at 1865.

Third, many of Plaintiff's complaints concern his dissatisfaction with the prison's policies and obligations to protect the female staff from sexual harassment and lewd behavior by inmates, suggesting his rights of expression have been hampered. Even under § 1983, these claims would fail to the extent Plaintiff asks the Court to interfere in matters of prison administration or security:

> [T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

Bell v. Wolfish, 441 U.S. 520, 547–48 (1979).

Because there are factors that cause the Court to hesitate to extend Bivens remedies to Plaintiff under the facts alleged, the Court declines to do so. See Ziglar, 137 S. Ct. at 1858. As such, Plaintiff's Amended Complaint is subject to dismissal under this Court's screening obligation for his failure to state a claim.

Accordingly, it is

**ORDERED**:

1. This case is **DISMISSED without prejudice.**

2. The **Clerk** shall enter judgment dismissing this case without prejudice, terminate pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 7th day of August, 2019.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Anthony Ravon Ruffin